579 A.2d 960

**In the Interest of E.J., Appellee.**

**Appeal of COMMONWEALTH of Pennsylvania.   (Two Cases)**

**In the Interest of R.P., Appellee.**

Superior Court of Pennsylvania.

Argued May 31, 1990.

Filed Sept. 5, 1990.

Karen L. Grigsby, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Ira B. Shrager, Philadelphia, for appellee, E.J.

Bradley Bridge, Asst. Public Defender, Philadelphia, for appellee, R.P.

Before ROWLEY, WIEAND, OLSZEWSKI, MONTEMURO, BECK, KELLY, POPOVICH, JOHNSON and FORD ELLIOTT, JJ.

POPOVICH, Judge:

This case was granted en banc consideration to resolve an appeal by the Commonwealth from the orders of the Court of Common Pleas of Philadelphia County, Juvenile Division, "discharging" the appellees (R.P. and E.J.) from five (5) counts each of Aggravated Assault, Simple Assault, Possession of an Instrument of Crime, Reckless Endangerment of Another Person, Criminal Conspiracy and Risking a Catastrophe. We dismiss the appeal.

The facts, as presented at the hearing, were properly characterized by the Juvenile Court judge as follows:

While elementary school children from St. Edward's School were having noontime recess in the schoolyard of the Hartranft Public School, one tan pit bull and a second dog, described by the complaining witnesses as a black and white dog, were released into the schoolyard. The five children who testified in Court said that they were bitten by the tan pit bull. One child said the black and white dog laid down at the end of the playground during the entire incident. The five complaining witnesses were unable to identify the individual or individuals who released the dogs. Only two of the complaining witnesses testified to hearing the command words "sic 'em", but these witnesses were unable to identify the individual or individuals in the playground who spoke these words. A classmate of the defendants testified that he saw the defendants with the dogs in a lot near the schoolyard and that he left their company prior to the schoolyard incident. He stated that the defendants' only intention was to mate the dogs. This was confirmed by a police officer who read into the record a statement taken from defendant, J[ ], six days after the incident. An older student was supervising the schoolyard during the recess and assisted in capturing the tan pit bull who was unable to identify the defendants as the individuals who released the dogs into the schoolyard.

At the completion of the hearing, the case was taken under advisement until January 11, 1989, whereupon the petitions against the eleven-year-old juveniles were "discharged", one of the grounds being that the evidence as presented by the Commonwealth was insufficient to establish the appellees' guilt beyond a reasonable doubt.[1] See Juvenile Court Opinion at 3.

1. An appellate court may affirm the actions of the court below for reasons other than those proffered by the initial tribunal hearing the matter on appeal. As a result, we find it unnecessary to reach the merits of the alternative ground for the Juvenile Court's dismissal of the charges against the appellees, i.e., that the Commonwealth failed to rebut the common law presumption of incapacity of juveniles between the ages of seven and fourteen to commit a crime (delinquent act). See *Commonwealth v. Durham,* 255 Pa.Super. 539, 389 A.2d 108

Following the denial of the Commonwealth's motion to reconsider the ruling entered, this appeal was filed and raises two questions for our consideration. Before addressing either one, however, we must decide whether the Commonwealth's appeal is properly before us for review.

Both juveniles argue to this Court that the orders "discharging" them from the offenses lodged are not appealable, whereas the Commonwealth, on the other hand, contends that the Juvenile Court's ruling was a "legal" decision on the question of the continuing viability of the rebuttable presumption of capacity (mens rea) of juveniles between the ages of seven and fourteen, and, as such, is appealable. See Commonwealth's Brief at 23 & 24.

At bar, the Juvenile Court found, and the record bears this out, that no evidence was offered by the prosecution to establish the guilt of the juveniles beyond a reasonable doubt. See Juvenile Court Opinion at 8. The absence of such evidence was the alternate basis for the crimes against the appellees being "discharged" by the court below. See note 1, supra.

Because jeopardy attached with the commencement of the juvenile hearing and the receipt of testimony, see *In the Interest of R.R.*, 317 Pa.Super. 334, 344 n. 12, 464 A.2d 348, 353 n. 12 (1983), with the Juvenile Court's "discharge" orders, the fundamental rule of double jeopardy jurisprudence became applicable to foreclose a review of such a finding ("discharge"), be it one that was entered by the court in "error or otherwise." *Commonwealth v. Tillman*, 501 Pa. 395, 397, 461 A.2d 795, 796 (1983); see also *Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978). In other words, because we read the record to indicate a finding of "not guilty" on the charges brought against the appellees (the nomenclature notwithstanding), the inquiry of this appellate court is terminated since the jurisdictional prerequisites for an appeal have not

(1978) (en banc). We leave the resolution of the continuing viability of the common law presumption of the incapacity of juveniles for another day.

been met by the appellant/Commonwealth. See *Commonwealth v. Ray*, 448 Pa. 307, 292 A.2d 410, 413 (1972); see also *Tillman*, supra. This position is consistent with and is an extension of the United States Supreme Court's teaching in *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986), wherein the Pennsylvania Supreme Court's view that a defendant's demurrer to the evidence, which was granted by the trial court, was not the equivalent of ruling on the sufficiency of the evidence was disapproved so as to preclude the Commonwealth's appeal. It was considered by the United States Supreme Court to be as if a "not guilty" verdict had been entered by the finder-of-fact. In so holding, the Court wrote:

> When a successful post[-]acquittal appeal by the prosecution would lead to proceedings that violate the Double Jeopardy Clause, the appeal itself has no proper purpose. Allowing such an appeal would frustrate the interest of the accused in having an end to the proceedings against him. * * * the Double Jeopardy Clause bars a post[-]acquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged."

476 U.S. at 145–146, 106 S.Ct. at 1749 (Citations omitted). Consequently, whether the finding of the trial court be labelled an "acquittal", "dismissal", or, as in the case instantly, a "discharge", the effect is the same for double jeopardy purposes.[2] Id. at 142, 106 S.Ct. at 1747. The

---

2. It is difficult to conceive of a scenario in which, were we to address the merits of the Commonwealth's claims and direct a remand for a re-assessment of the case, a "resolution of factual issues going to the elements of the offense[s] charged", as prohibited by *Smalis v. Pennsylvania*, 476 U.S. 140, 146, 106 S.Ct. 1745, 1749, 90 L.Ed.2d 116 (1986), would not take place.

We find that the Commonwealth focuses too much upon the verbiage utilized by the adjudicating tribunal in entering its ruling. Rather, one must look to whether an inquiry *and resolution* (be it under the caption of "guilty", "not guilty", "dismissal", or "discharge") of the factual matters dealing with the elemental aspects of the offense(s) charged have transpired. This, we find, occurred instantly and is not

Commonwealth's contention to the contrary at page 21 of its brief that "the word 'discharge' is not the equivalent to 'not guilty' or 'not delinquent' " flies in the face of the Juvenile Court's specific determination that the "evidence was insufficient to establish the [appellees'] guilt beyond a reasonable doubt". Such a finding, as was *Smalis'* ruling on the effect of the grant of a demurrer, triggered the protective and insulating sphere of the Double Jeopardy Clause so as to deny any appeal by the prosecution to have the orders reviewed. As a result, we are without jurisdiction to hear the present appeal.

Appeal dismissed.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

I am in complete agreement with the majority's treatment regarding the effect of the juveniles' "discharge" on this appeal. I would address, however, the alternate basis offered by the trial court. This issue was briefed and argued by the parties before this court on appeal; therefore, the time has come to resolve this issue. Accordingly, I write separately to address the substantive issue as to whether the common law rule of a rebuttable presumption that children under the age of fourteen lack capacity to be criminally responsible has been superceded by the Juvenile Act.

Statutes are not presumed to change the common law unless expressly declared in their provisions, *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976); however, where the Legislature expressly provides a comprehensive definitional scheme, these provisions supercede the prior common law principles. Under the Juvenile Act of 1976 (as amended in 1977), the Legislature has expressly included specific ages and categories that replace the common law

subject to appellate scrutiny under the guise of assessing a "legal" ruling by the trial court. Such is just not the case since a "factual" determination as to the sufficiency of the evidence was made at bar, and, as such, is not reviewable on appeal. Id.

presumption concerning the capacity of a child to commit a criminal act. 42 Pa.C.S.A. §§ 6301–6302. The plain language of § 6302 provides that a "delinquent child" is "[a] child ten years of age or older whom the court has found to commit a delinquent act ...," and a "dependent child" is "[a] child who ... is under the age of ten years and has committed a delinquent act." 42 Pa.C.S.A. § 6302.[1]

Moreover, the common law presumptions are inapplicable to juvenile proceedings which were created in order to protect children from the harsh punishments of the adult criminal system. *See Commonwealth v. Durham, supra,* (Price, J., dissenting). In my view, the Juvenile Act accomplishes the goal of removing the consequences of criminal behavior from those children who have committed delinquent acts and instead substitutes a program of supervision, care and rehabilitation. *See* 42 Pa.C.S.A. § 6301(b)(2).

---

1. The rule stated in *Commonwealth v. Durham,* 255 Pa.Super. 539, 389 A.2d 108 (1978), that "[t]he common law presumption of incapacity, in the case of a child between the ages of seven and fourteen, is still very much alive in this jurisdiction," is not controlling here since it was based on the old Juvenile Court Law, 11 P.S. §§ 50–101 to 50–332 and has been statutorily preempted by 42 Pa.C.S.A. § 6301.